1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

G.B.L., et al.,

Plaintiffs,

v.

BELLEVUE SCHOOL DISTRICT
#405,

Defendant.

C12-427 TSZ

ORDER

THIS MATTER comes before the Court on Plaintiffs' Motion for Summary
Judgment, docket no. 18, and Defendant's Motion for Summary Judgment, docket no. 19.
Having considered the motions, all pleadings filed in support of and opposition to the
motions, and the administrative record, the Court GRANTS the Defendant's Motion for
Summary Judgment, DENIES the Plaintiffs' Motion for Summary Judgment and enters
the following Order.

I.     **Summary**

In this case the Plaintiffs seek judicial review of an administrative law judge (ALJ)
determination that the Bellevue School District did not fail to provide Plaintiff G.B.L.

ORDER - 1

with a free and appropriate public education (FAPE), as required by federal law.  AR

Vol. I at p. 67 (docket no. 15).[1]  This case presents the unfortunate story of a bright

Student who qualified for special education services and was given an IEP allowing the

Student to participate in the accelerated PRISM program for highly gifted students;

Parents who worked every day to ensure the Student's academic success by monitoring

daily reports, communicating with the Student's special education teacher, and enlisting

professional support and services whenever needed; and a School District that took many

extra steps to facilitate the Student's learning.  Despite the interventions of the Parents

and the District, the Student was unable to achieve success in the PRISM program and

the Parents ultimately removed the Student from the District.

The Parents filed a due process hearing complaint against the District alleging that

the District had failed to provide the Student with a FAPE and had denied the Parents full

participation in the Student's education.  A due process hearing was held before an ALJ

to consider the Parents' claim.

The ALJ considered extensive witness testimony and evidence presented by both

parties over the course of 14 days, conducted a thorough and well-reasoned review of the

facts and law relevant to the case and denied relief to the Parents and Student.  The ALJ

concluded that the gifted program was an inappropriate program for the Student for many

reasons and that "[t]he inappropriateness…could not be compensated for by the supports,

---

[1] Citations to the sealed Administrative Record, docket no. 15, will be in the format AR Vol. # at p. #.
Where appropriate, citations to specific lines or paragraphs in the record will be noted following a colon
after the page number.

accommodations, one-on-one paraeducator, or the dedicated efforts of the school staff who tried to help the Student succeed."  AR Vol. I at p. 63:¶¶ 35-36.  This action followed.  Plaintiffs seek judicial review of the ALJ decision denying the Parents' claims.

## II.     Background

Plaintiff G.B.L. ("Student") is a minor child who attended school in the Bellevue School District ("District") for the 2010-2011 school year.  Complaint, docket no. 1, at 1. This case was filed by the Student's parents, C.B. and A.S.L. ("Father" and "Mother", respectively, collectively "Parents," and with the Student collectively "Plaintiffs").  Id. at 1, 3.  The Parents filed a due process hearing complaint on December 3, 2010.  AR Vol. I at p. 25.  Administrative Law Judge Michelle C. Mentzer heard the matter over the course of fourteen days from May 23, 2011, to October 3, 2011, during which time eighteen witnesses testified.  Id. at pp. 25 – 26.  On December 15, 2011, the ALJ entered 117 Findings of Fact and 56 Conclusions of Law, and ultimately held that Plaintiffs had not met their burden on any claim.  Id. at pp. 27 – 67.

### 1.  2010-2011[2] Placement and the August 2010 IEP

Prior to the 2010-2011 school year, the Student was diagnosed with ADHD and sensorineural hearing loss.  AR Vol. VI at p. 42:18 – p. 43:5; AR Vol. VII at p. 191:5-11. He qualified for special education services with the District in January, 2010, and was given an Individualized Education Program (IEP) that went into effect for the remainder of the 2009-2010 school year.  AR Vol. VI at p. 57:17 – p. 58:21.  For the 2010-2011

---

[2] The ALJ's findings discuss the Student's early education, AR Vol. I at pp. 27- 29, but the only year at issue in this case is the 2010-2011 school year.  See Complaint, docket no. 1, at 17.

school year, his seventh grade year, the Student was accepted into the District's gifted

program (PRISM), even though his entrance score was one point below the requirement.

Id. at p. 63:20-24.  The PRISM program is designed to be an accelerated program for

highly gifted students with more advanced curriculum and a faster pace.  AR Vol. X at

p. 1316:5-14.

Over the course of the 2010 summer, the IEP team[3] met to create a new IEP that

would go into effect when the Student began the PRISM program.  AR Vol. VI at p.

65:8-24.  This document became known as the "August 2010 IEP."  AR Vol. II at pp. 581

– 618.  The August 2010 IEP contained 48 Accommodations/Modifications and 9 Special

Education Services to be provided to the Student during the school year.  Id. at pp. 604 –

607, 610.  The IEP also set forth 8 Annual Goals, id. at pp. 598 – 603, and a separate

document included specific objectives related to each Goal.  Id. at pp. 614 – 618.

Although the Student's performance in the PRISM program began satisfactorily,

both his grades and mood quickly declined over the course of the school year.  AR Vol. I

at p. 46:¶ 68.  The Parents and the District were unsuccessful in resolving issues relating

to the Student's IEP and placement, which led to the underlying due process hearing.

### 2.  *Plaintiffs' Challenges to the August 2010 IEP*

At the hearing the Parents challenged the implementation of four of the annual

goals listed on the August 2010 IEP: organization in writing, organization and planning,

self management, and note taking.  AR Vol. I at p. 36:¶ 38.  The ALJ found that all four

---

[3] The IEP team included the Parents and representatives from the District, including teachers from Odle, the Student's new school.  AR Vol. VI at p. 65:14-21.

1  goals challenged by the Parents were implemented by the District.  Id. at pp. 36 – 43.

2  The ALJ highlighted specific examples of testimony by the Student's teachers, entries in

3  the daily progress reports, and an end-of-semester summary showing that these goals

4  were being implemented and that the Student's progress was being reported.  Id.

5  Although the parents argued that the goals were not properly implemented because the

6  specific measurements contained in the IEP were not used, AR Vol. II at pp. 614 – 618,

7  the ALJ found that the daily progress reports and summary indicated implementation of

8  these goals and that some of the numeric measurements were not appropriate given the

9  Student's progress at the time.  AR Vol. I at pp. 36 – 43.

10        One of the August 2010 IEP programs challenged in this Court is the "Speech-

11  Language Pathology" service, or language consulting minutes.  AR Vol. II at p. 610.  The

12  IEP states that the "special education teacher and NWLLS[4] consultation" is responsible

13  for delivering this service at a frequency of "60 minutes / 1 Times Monthly."  Id.  The

14  duration of the service is to go from 8/30/2010 through 6/28/2011.  Id.  The District

15  representatives testified that they did not consult with NWLLS on a monthly basis

16  because "[t]hat was never the plan."  AR Vol. XV at p. 1743:5-9.  Two District witnesses

17  present at the IEP meetings over the summer testified that the IEP team never discussed

18  consulting monthly with NWLLS and that rather there would be two consultations, one

19  during the summer and one shortly after the school year started.  Id. at p. 1743:11-18; AR

20  Vol. XII at p. 689:3-15.  Although this issue was discussed in testimony, the ALJ made

21

22  [4] NWLLS stands for Northwest Language and Learning Services.  Plaintiffs' Motion for Summary Judgment, docket no. 18, at 9.

23

ORDER - 5

1   no findings or conclusions on this issue because it was not raised in the Plaintiffs'

2   amended administrative complaint.  AR Vol. I at pp. 345 – 351.

3        Another challenged service from the August 2010 IEP is the 1:1 para-educator

4   support.  AR Vol. II at p. 610.  The Parents agree that the para-educator was provided as

5   specified in the IEP, but argue that the services of the para-educator were not effective.

6   Plaintiffs' Motion for Summary Judgment, docket no. 18, at 10.  The Parents claim that

7   the ineffectiveness of the para-educator is shown by the Student's failing grades, the

8   Student's feeling that the para-educator wasn't helping, and the fact that the Student

9   resented having the para-educator.  AR Vol. IX at p. 638:24 – p. 639:2; AR Vol. VII at

10  p. 243:16-18; AR Vol. XIV at p. 1199:24.  The ALJ considered all of the evidence

11  presented by the Parents and the testimony of the Student's teachers.  The ALJ found that

12  nothing in the testimony indicated ineffectiveness of the para-educators who worked with

13  the Student.  AR Vol. I at p. 45:¶ 61.  The ALJ also found credible the testimony of the

14  special education teacher, who testified to the qualifications and performance of each

15  para-educator who worked with the student and who felt that the para-educators

16  maintained a good balance between "providing necessary intervention and being overly

17  intrusive."  Id. at p. 45:¶¶ 62-63.  The ALJ concluded that while the first para-educator

18  was only adequate, the second and third provided very good service and there is no

19  evidence showing a material failure to implement the para-educator service.  Id. at

20  p. 65:¶ 46 – p. 66:¶ 48.

21       The final issue challenged from the August 2010 IEP is the provision of an

22  Assistive Technology Evaluation.  The Father believed that the District would conduct an

23

ORDER - 6

Assistive Technology Evaluation, based on discussions of the IEP team over the summer. AR Vol. VIII at p. 563:13-17.  However, the IEP does not contain a specific requirement for such an evaluation.  AR Vol. II at pp. 581-618.  The Parents' desire for an Evaluation was first brought to the District in January, 2011, AR Vol. XVII at p. 2151:21 – p. 2152:4, and the Parents were provided information about an evaluation in mid-February. AR Vol. VIII at p. 560:6-9.  The Parents requested additional details, which were provided April 28, 2011, and the Parents gave consent for the evaluation on May 2, 2011. Id. at pp. 560 – 565.   The ALJ found that the IEP did not require the District to provide an Assistive Technology Evaluation.  AR Vol. I at p. 54:¶ 109.  The ALJ also found that the delay in conducting the assessment following consent was because the Parents wanted to wait until the due process hearing was complete.  Id. at p. 55:¶ 111.  At the time of the hearing, the assessment had taken place but an evaluation review meeting had not occurred.  Id.

### 3. *Requested Homework Limitation*

The accelerated PRISM program has a critical component of homework and students are expected to develop understanding and comprehension of the material outside of class. AR Vol. X at p. 1325:22 – p. 1326:9.  The homework is also more difficult than in the regular education program.  Id. at p. 1326:24-25.  The PRISM program homework policy stresses the importance of keeping up with homework as class lessons are sequential and "catching up" on homework creates problems.  AR Vol. II at p. 1033.  During his sixth grade year in regular education, which has much less homework than the PRISM program, the Student spent four hours each night doing

1    homework.  AR Vol. VI at p. 113:8-10.  In the PRISM program, the Student was unable

2    to keep up with the volume of work, and his therapist Dr. Kwon suggested a two hour per

3    night limitation on the amount of homework assigned.  AR Vol. VII at p. 248:3-10.

4           The District denied the request to limit the Student's homework to two hours per

5    night, finding that this would fundamentally alter the "PRISM program curriculum

6    standards, grading standards, and performance expectations."  AR Vol. V at p. 1952.  The

7    District did not discuss the limitation with the Student's teachers prior to making the

8    determination.  AR Vol. XIV at p. 1174:13-16.  The Student's teachers testified on cross-

9    examination that if they had been asked to limit the Student's homework, they would

10   have done so.  AR Vol. XIV at p. 1177:10-11; AR Vol. X at p. 1416:14-17.  However,

11   their willingness to limit homework does not negate the teachers' belief that the

12   homework is a necessary part of the PRISM program.  AR Vol. XIV at p. 1171:10-13,

13   1173:9-22; AR Vol. X at p. 1397:5-10.  The teachers also testified that setting a time

14   limit would not be a good option for helping the Student be successful in the program

15   because of the educational value in each assignment and the specific processing

16   difficulties faced by the Student in completing homework.  AR Vol. XIV at p. 1171:7-22;

17   AR Vol. X at p. 1396:20 – p. 1397:13.

18          The ALJ found the District's witnesses on this issue more persuasive.  AR Vol. I

19   at p. 44:¶ 59.  The ALJ found that Dr. Kwon was suggesting the accommodation to

20   alleviate the Student's stress, but that she was not qualified to speak to whether the

21   Student could continue successfully in the PRISM program with this accommodation.  Id.

22   The ALJ also found that the Student was already doing partial homework and was not

23

1    mastering the course material, so the requested accommodation would not have allowed

2    the Student to continue in the program and learn the course material.  Id.

3    **4.  *Communication Between the Parents and the District***

4    Pursuant to a mediation agreement between the Parents and the District, the first

5    point of contact between the Parents and the school would be the special education

6    teacher, Ms. Curtis-Greer.  AR Vol. VI at p. 105:10-12.  The Parents were asked not to

7    email the Student's other teachers directly, and testimony indicated that the teachers were

8    directed not to read emails received directly from the Parents.  Id. at p. 106:9-12.  Ms.

9    Curtis-Greer generally responded to all emails from the Parents within three school days

10   and it was very typical for her to receive multiple emails in a single day.  AR Vol. XV at

11   p. 1646:16-24, p. 1649:2-5.

12   In addition to contact with Ms. Curtis-Greer, the Parents received daily progress

13   reports from the school, filled out by the para-educator.  AR Vol. VII at p. 146:11-24.

14   The Parents also had access to the District's Parent Internet Viewer, where parents can

15   look at student's grades, as well as sites for each class where teachers post projects, due

16   dates, and important documents.  AR Vol. X at p. 1331:8-25.  The Parents had in-person

17   meetings with each of the Student's teachers in November 2010.  AR Vol. VI at p. 145:7-

18   12.

19   The Parents were also included in IEP meetings with the District multiple times

20   over the summer of 2010, as well as additional meetings on September 14 and October

21   21, 2010.  AR Vol. VI at pp. 62 – 65, p. 93:15-17, p. 122:15-16.  Beginning with the

22   October meeting, the District chose to hold only facilitated meetings with the Parents.  Id.

23

ORDER - 9

1   at p. 122:7-8.  For the scheduled meeting on November 30, 2010, the District selected a

2   District employee to serve as the facilitator.  Id. at p. 151:12-23.  The Parents protested

3   the use of this person as facilitator and the District refused to continue the meeting

4   without a facilitator.  Id. at pp. 152 – 153.  The next IEP meeting was held on January 18,

5   2011, which was attended by the IEP team and the Student's therapist Dr. Kristi Kwon.

6   AR Vol. VII at p. 265:22-25.

7           On December 3, 2010, the Father asked the District to provide him with all records

8   pertaining to the Student in advance of an IEP meeting scheduled on December 6.  AR

9   Vol. VIII at p. 522:15-24.  The District informed the Father that the records were

10  available for examination at the District office, but he requested copies and detailed lists

11  of the records.  AR Vol. I at p. 347.  The Father picked up the copied documents at the

12  IEP meeting on January 18, 2011, but later discovered that only documents through the

13  end of September were provided.  AR Vol. VIII at p. 524:23 – p. 525:7.  The Parents

14  notified the District of the issue two weeks after receiving the documents, and the District

15  provided the missing documents within two weeks of the notification.  AR Vol. XVII at

16  p. 2050:13-22.

17  ### 5.   *The Student's Performance in PRISM and Withdrawal to Private School*

18          Over the course of the 2010-2011 school year, the Student's academic

19  performance declined from primarily B's and C's to primarily D's and F's.  AR Vol. II at

20  p. 973.  The Student's teachers testified that the Student uniformly received full credit for

21  completed homework that was turned in late.  AR Vol. XIV at p. 1073:15-17, p. 1163:14-

22  15.  Even though the Student was not graded down for late work, he was still graded

23

1  based on what was actually turned in so an incomplete assignment would not receive a

2  full grade.  Id. at p. 1073:19-23.

3         On February 22, 2011, the Parents notified the District that they were removing

4  the Student from the District effective March 11, 2011, and enrolling him full time at

5  Dartmoor, a private school.  AR Vol. II at pp. 1048 – 1049.  The Parents indicated that

6  they would be seeking reimbursement from the District for the Student's private school

7  tuition costs.  Id.

8         On March 14, 2011, the Student began full-time enrollment at Dartmoor where the

9  Student received one-on-one instruction in four core classes.  AR Vol. I at p. 51:¶ 92.

10  The Student did well academically at Dartmoor, however the ALJ found that the

11  Student's PRISM teachers "testified persuasively that the curriculum used [at Dartmoor],

12  and the work the Student is producing, are significantly below the level expected in

13  PRISM."  Id. at p. 51:¶ 93.  The ALJ concluded that the Student's academic success at

14  Dartmoor "does not warrant a conclusion that his failure in PRISM was due to the IEP

15  not being implemented (or the homework limits the Parents wanted not being

16  implemented)" because the "Dartmoor curriculum is not nearly at the same level as

17  PRISM."  Id. at p. 64:¶ 37.

18         The District notified the Parents on March 8, 2011, that the District would not pay

19  the costs of private tuition.  AR Vol. V at p. 2058.  The District also indicated that, given

20  the Parents' decision to place the Student in a private program, the District was adopting

21  a draft IEP without the Parents' feedback, but would welcome the opportunity to meet

22  with the Parents to discuss the IEP.  Id. at p. 2059.

23

ORDER - 11

### III.    Standard of Review

Although this case is presented as cross-motions for summary judgment, the Plaintiffs are seeking judicial review of the decision of the ALJ under the IDEA and thus the Court is not bound by the normal rules of summary judgment review.  J. S. v. Shoreline Sch. Dist., 220 F. Supp. 2d 1175, 1184 (W.D. Wash. 2002) (citing Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1472 (9th Cir. 1993)).  The standard of review in an appeal of an administrative decision under the IDEA is a mixture of deference and discretion.  Ojai, 4 F.3d at 1472.

The court must give "due weight" to the findings of the administrative law judge, but the due weight given is within the discretion of the court.  Ms. S. ex rel. G v. Vashon Island Sch. Dist., 337 F.3d 1115, 1126 (9th Cir. 2003).  Two of the factors for the court to consider in exercising that discretion is the thoroughness of the administrative findings of fact as well as whether the ALJ's findings are based on credibility determinations of live witness testimony.  J. S. v. Shoreline Sch. Dist., 220 F. Supp. 2d 1175, 1184 (W.D. Wash. 2002) (citing Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995) and Amanda J. ex rel. Annette J. v. Clark County Sch. Dist., 267 F.3d 877, 887-89 (9th Cir. 2001)).

The court must consider the administrative findings carefully and then may accept or reject the findings in part or in whole.  Ms. S. ex rel. G v. Vashon Island Sch. Dist., 337 F.3d 1115, 1126 n.16 (9th Cir. 2003).  Legal conclusions are reviewed de novo.  Id. at 1127.  The party challenging the decision of the ALJ – the Plaintiffs in this case – bears the burden of proof.  Id.

**IV.    IDEA Claims Against the District**

The Individuals with Disabilities Education Act (IDEA) was enacted to ensure that the educational needs of children with disabilities are being fully met.  20 U.S.C. § 1400(c).  The IDEA requires participating states to provide a FAPE to all children with disabilities, emphasizing special education and related services designed to meet their unique needs.  Id. § 1400(d)(1).  One mechanism for ensuring that a FAPE is provided is the use and implementation of an IEP.  Id. § 1414(d).  The statute directs who must be involved in creating the IEP (the IEP Team), as well as what must be included in the IEP and how the IEP shall be developed and reviewed.  Id.  In addition, the statute provides several procedural safeguards for parents, including the opportunity to examine all records, participate in meetings, obtain written notice from the local educational authority prior to a change in the IEP, mediate any disputes, and present a complaint within two years of the alleged action.  Id. § 1415(b).

The Plaintiffs main contention is that the Student was failing in his program and therefore the District necessarily denied the student a FAPE.  Plaintiffs' Motion for Summary Judgment, docket no. 18, at 15.  The Plaintiffs contend that the failing grades were indicative of how he was doing in the program and is evidence that the Student did not receive a benefit from the program.  Plaintiffs' Reply, docket no. 23, at 4 – 5. Regardless of whether the Student was unable to achieve high grades in the gifted program, the Court must evaluate each of the individual components and the reasons for the lack of success.

1   In this case, the Plaintiffs are alleging two violations of the IDEA.  First, the

2   Parents are challenging the implementation of the Student's August 2010 IEP.  Second,

3   the Parents are asserting that the District violated the procedures of the IDEA by failing

4   to allow the Parents full participation.

5   ### 1. Implementation of the August 2010 IEP

6   This case involves Plaintiffs' challenge to the implementation, rather than the

7   content, of the August 2010 IEP.  The Plaintiffs must prove a *material* failure to

8   implement the IEP in order to establish a violation of the IDEA.  Van Duyn v. Baker Sch.

9   Dist., 502 F.3d 811, 822 (9th Cir. 2007).  "A material failure occurs when there is more

10   than a minor discrepancy between the services a school provides to a disabled child and

11   the services required by the child's IEP."  Id.

12   The Parents raise four issues regarding the failure of the District to implement the

13   August 2010 IEP.  The Parents allege that: (1) the goals on the IEP were not

14   implemented; (2) the language consulting service minutes on the IEP were not followed;

15   (3) the services of the para-professional were not implemented appropriately; and (4) the

16   assistive technology evaluation was not provided in a timely fashion.  Plaintiffs' Motion

17   for Summary Judgment, docket no. 18, at 7 – 17.

18   ### a) Implementation of the Student's Goals

19   The Parents allege that three of the goals on the IEP were not implemented:

20   written language, study skills for organization and planning, and learning to communicate

21   feelings.  Id. at 8; AR Vol. II at pp. 598 and 600.  The Father believed that these three

22   goals were not implemented because the Student was failing and because the Father

23

didn't see the Student use any strategies to help him with organization or communication. AR Vol. IX at pp. 620 – 622.

The ALJ entered 16 findings of fact regarding implementation of the goals, and overall found that the implementation of each challenged goal was appropriately reflected in the testimony of the Student's teachers, entries in the daily progress reports, and a progress summary at the end of the first semester.  AR Vol. I at pp. 36 – 43.  Based upon these findings the ALJ concluded that extensive evidence existed that the goals were implemented and thus the Parents failed to carry their burden of proof on this issue.  Id. at p. 63:¶ 33.

The IDEA requires an IEP to state how progress will be measured on the Student's annual goals, which can be done through the use of "quarterly or other periodic reports." 20 U.S.C. §1414(d)(1)(A)(i)(III).  The District reported on the Student's progress through the daily progress reports, which can be considered a periodic report on the Student's progress.  Even though the daily progress report did not fully use the measurements for each goal as specified in the goal attachment to the IEP, this did not rise to the level of a material failure to implement the Student's IEP.  The evidence established that the Student was being evaluated according to the goals in the IEP and the Parents were receiving feedback regarding his progress.  The ALJ's findings on this issue were thorough and comprehensive, and after according them due weight, are accepted by the Court.  The Court concludes that the failure to implement every measurement or objective of the annual goals is a minor discrepancy between the services provided by the

1    District and the services required under the IEP.  Thus, the District did not fail to

2    implement the goals on the IEP and did not deny the Student a FAPE.

3         **b)  Language Consulting Minutes**

4         The ALJ provided no findings on the issue of the 60 minutes of language

5    consulting services, as the issue was not included in the Plaintiffs' amended

6    administrative complaint.  See AR Vol. I at pp. 345 – 351.  The District asserts that this

7    argument is forfeited because the Plaintiffs did not raise it in the administrative due

8    process complaint nor did they seek leave to amend their complaint to include it.

9    Defendant's Response, docket no. 22, at 13.  The Plaintiffs argue that the issue was

10   "before the ALJ" because the Parents requested compensatory education in the form of

11   speech and language services as a proposed remedy.  AR Vol. I at p. 350.  The Plaintiffs

12   provide no cases to support their position.

13        The IDEA requires a party to fully exhaust administrative remedies before

14   bringing a complaint in court.  20 U.S.C. § 1415(l).  The Plaintiffs are barred from

15   bringing to the Court any issues that were not raised at the due process hearing.  Rafferty

16   v. Cranston Pub. Sch. Comm., 315 F.3d 21, 26 (1st Cir. 2002).  The Plaintiffs make no

17   argument that exhaustion should be excused because the administrative process would be

18   futile or inadequate, and as the Plaintiffs bear the burden of proof, no excusal is

19   warranted.  Because the failure to provide language consulting services was not raised as

20   an issue in the administrative complaint, the matter was not properly before the ALJ and

21   the Plaintiffs are barred from raising the issue here.

22

23

c) **Effectiveness of Para-Educator Support**

The ALJ considered the testimony of the Father and the Student's teachers, including the special education teacher Ms. Curtis-Greer, and concluded that the service of the para-educators ranged from adequate to very good and that the Parents failed to produce evidence showing a material failure to implement the para-educator service.  AR Vol. I at p. 65:¶ 46 – p. 66:¶ 48.  The ALJ found the testimony of the teachers, who worked directly with the para-educator, to be persuasive on this point.  Id. at p. 45:¶¶ 60-63.  In addition, the only other evidence the Father introduced as to the ineffectiveness of the para-educator were alleged inconsistencies on the daily progress reports, a contention the ALJ considered and dismissed.  Id. at p. 45:¶¶ 64-65.

The ALJ's findings on this issue are thorough and comprehensive and include a credibility determination of the witnesses.  The ALJ's findings are supported by the evidence and after being accorded due weight, the Court accepts the findings of the ALJ.  The ALJ's conclusions on this issue are well reasoned and are adopted by the Court.  The Court holds that the District provided one-on-one para-educator support as required by the IEP and the Parents have failed to meet their burden of showing that the para-educator support was ineffective and resulted in a denial of FAPE.

d) **Assistive Technology Evaluation**

Although the Parents believed that an Assistive Technology Evaluation would be conducted, the ALJ found that this was not referenced in the August 2010 IEP.  Id. at p. 54:¶ 109.  The ALJ also found that the District acted upon the Parents' request in a timely manner and that the delay between the request and the Parents' eventual consent was due

to the Parents' wish to review the evaluation procedures.  Id. at p. 54:¶ 110 – p. 55:¶ 111.

The ALJ's findings are thorough and supported by the evidence.  The August 2010 IEP

does not state a requirement that an Assistive Technology Evaluation take place and thus

the District's failure to provide one was not a failure to implement the Student's IEP.

Furthermore, once the District became aware that the Parents wanted the evaluation to

take place, the District acted in a timely manner and did not unduly delay the evaluation

from taking place.  The findings of the ALJ that the failure to timely provide an Assistive

Technology Evaluation did not result in a material failure to implement the Student's IEP

are well reasoned.

        For the reasons discussed above, the Court concludes that Plaintiffs have failed to

show a material failure to implement the Student's August 2010 IEP and thus have failed

to establish a violation of the IDEA.

### 2.  *Participation by the Parents*

        In addition to challenging the implementation of the August 2010 IEP, the Parents

also allege that the District violated the IDEA by failing to allow the Parents full

participation in the Student's education.  Plaintiffs' Motion for Summary Judgment,

docket no. 18, at 17.  The Parents argue that they were restricted in their ability to get

information from teachers, did not receive required progress reporting on goals, and were

not provided complete records in a timely manner.  Id. at 17 – 19.

        The IDEA's procedures provide parents an opportunity to examine records

relating to their child and participate in meetings regarding the evaluation and placement

of their child.  20 U.S.C. § 1415(b)(1).  Parents are also to be members of the IEP team

1   determining the proper evaluation and placement of the child.  Id. § 1414(d)(1)(B)(i).  A

2   procedural violation of IDEA results in a denial of a FAPE if it "seriously infringes the

3   parents' opportunity to participate in the IEP formulation process."  J. L. v. Mercer Island

4   Sch. Dist., 592 F.3d 938, 953 (9th Cir. 2010).

5        In this case, the ALJ entered multiple findings regarding the Parents' opportunity

6   to participate in the IEP formulation process.  The ALJ found that the Parents participated

7   in IEP meetings several times throughout the 2010-2011 school year.  AR Vol. I at pp. 47

8   – 50.  The Father was very involved in those meetings and participated fully, including

9   determining what would be discussed and having direct input into what classes the

10  Student should take and what services should be provided.  See, e.g., id. at p. 31:¶ 23,

11  p. 35:¶ 35, p. 48:¶ 76.

12       In addition to IEP meetings, the Parents separately had individual meetings with

13  each of the Student's teachers in the fall of 2010.  Id. at p. 48:¶ 77.  The Parents also had

14  frequent and lengthy email communications with Ms. Curtis-Greer.  Id. at p. 47:¶ 71.

15       The ALJ found that the District promptly responded to the Parents' records request

16  by informing the Parents the documents were available for viewing.  Id. at p. 49:¶ 82.

17  When copies were requested, the District complied and notified the Parents on January

18  12, 2011, that the records were available.  Id.  The ALJ also found that the District was

19  timely in responding to the Parents when it was discovered that more recent documents

20  were not included in the copied records.  Id.

21       The IDEA does not specify how much contact parents should have with teachers

22  and does not speak to whether IEP meetings may not be facilitated.  The ALJ's findings

23

ORDER - 19

1  show that the Parents were not denied an opportunity to participate in the IEP formulation

2  process.  The Court concludes that the Parents have failed to meet their burden of

3  showing that the District did not allow the Parents full participation in the Student's

4  education.

5      **V.      ADA and Section 504 Claims Against the District**

6          For the first time in this litigation, Plaintiffs raise claims under the Americans with

7  Disabilities Act (ADA)[5] and Section 504 of the Rehabilitation Act (Section 504).[6]  See

8  Complaint, docket no. 1, at 17.

9      ***1.  Exhaustion of Administrative Remedies***

10         The IDEA does not preclude plaintiffs from seeking relief under other federal

11  statutes, but it does require that plaintiffs first exhaust their administrative remedies

12  before filing a civil action.  20 U.S.C. §1415(l).  The Ninth Circuit treats this exhaustion

13  requirement as a claims processing provision that IDEA defendants may offer as an

14  affirmative defense.  Payne v. Peninsula Sch. Dist., 653 F.3d 863, 867 (9th Cir. 2011).

15  The District has raised non-exhaustion as a defense to the ADA and Section 504 claims

16  in this case.[7]

17

18  _____

19  [5] 42 U.S.C. § 12101 *et. seq.*

   [6] 29 U.S.C. § 794 *et. seq.*

20  [7] A plaintiff's failure to exhaust will typically result in a dismissal without prejudice subject to an
   unenumerated Rule 12(b) motion rather than a grant of summary judgment because as a general matter
21  the Court is making no determination as to the merits.  Payne v. Peninsula Sch. Dist., 653 F.3d 863, 881
   (9th Cir. 2011).  The District asks the Court to treat this section of its Motion as an unenumerated rule
22  12(b) motion as necessary for the disposition of these claims.   Defendant's Motion for Summary
   Judgment, docket no. 19, at 23 n.6.

23

1    Under Ninth Circuit precedent, the IDEA requires exhaustion of IDEA remedies

2  when the action brought under the ADA or Section 504 "seek[s] *relief* that is also

3  available" under the IDEA.  Id. at 872 (emphasis in original).  There are three situations

4  where exhaustion is required: (1) "when a plaintiff seeks an IDEA remedy or its

5  functional equivalent"; (2) when "a plaintiff seeks prospective injunctive relief to alter an

6  IEP or the educational placement of a disabled student"; and (3) when "a plaintiff is

7  seeking to enforce rights that arise as a result of a denial of a free appropriate public

8  education, whether pled as an IDEA claim or any other claim that relies on the denial of a

9  FAPE to provide the basis for the cause of action."  Id. at 875.

10    Looking at the three situations requiring exhaustion identified in Payne, each

11  situation applies to this case.  First, in terms of types of remedies under consideration, the

12  Plaintiffs are seeking reimbursement of private school tuition, provision of speech and

13  language therapy services, creation of a new IEP including provision of appropriate

14  services, and attorney's fees and costs.  Complaint, docket no. 1, at 19-20.  These types of

15  relief are available under the IDEA.  See Payne, 653 F.3d at 877 (counseling, tutoring,

16  private school costs, and altering educational placement are available remedies under the

17  IDEA); 20 U.S.C. § 1415(i)(3)(B)(i)(I) (award of attorney's fees available to prevailing

18  party who is the parent of a child with a disability).  Second, the Plaintiffs are requesting

19  prospective injunctive relief to alter an IEP or the educational placement of the Student

20  by requesting a new IEP with specific services and placement parameters.  Complaint,

21  docket no. 1, at 20.  Third, the Plaintiffs are claiming denial of a FAPE as the basis for a

22  cause of action under IDEA as well as ADA and Section 504.  Complaint, docket no. 1,

23

1    at 19.  Because the three <u>Payne</u> situations apply, the Plaintiffs ADA and Section 504

2    claims are subject to the IDEA exhaustion requirement.

3           The Plaintiffs make two arguments for why non-exhaustion should not result in

4    the dismissal of the ADA and Section 504 claims.  First, the Plaintiffs raise futility as a

5    defense to non-exhaustion by claiming that the ALJ would have dismissed claims under

6    laws or statutes other than IDEA.  Plaintiffs' Response, docket no. 21, at 20.  However,

7    the Plaintiffs provide no support for this assertion.  The IDEA exhaustion requirement

8    may be waived when "resort to the administrative process would either be futile or

9    inadequate" and the Plaintiffs bear the burden of proving that the administrative process

10   would have been futile.  <u>Kutasi v. Las Virgenes Unified Sch. Dist.</u>, 494 F.3d 1162, 1168

11   (9th Cir. 2007).  Ninth Circuit case law indicates that other claims may be argued at the

12   hearing and must be raised at the hearing to avoid non-exhaustion issues.  <u>See</u>, <u>e.g.</u>, <u>JG v.</u>

13   <u>Douglas County Sch. Dist.</u>, 552 F.3d 786, 802-803 (9th Cir. 2008) (holding that IDEA

14   "allows claims 'with respect to any matter relating to the identification, evaluation, or

15   educational placement of the child, or the provision of a free appropriate public

16   education' to be heard" and thus "Appellants also could have argued their [Section 504]

17   discrimination claim in the hearing.").

18          Second, the Plaintiffs assert that they have exhausted the IDEA administrative

19   process and were denied their requested relief and are therefore seeking to both overturn

20   the ALJ decision as well as seeking relief for claims under the ADA and Section 504.

21   Plaintiffs' Response, docket no. 21, at 22.  The Plaintiffs cite no case law supporting this

22   interpretation of the exhaustion requirement.

23

1    Under Payne, the Plaintiffs are required to exhaust their administrative remedies

2 before raising claims under ADA and Section 504.  The Plaintiffs have not met their

3 burden of showing that the exhaustion requirement should be waived, and thus these

4 claims must be dismissed without prejudice.  However, as the facts underlying the

5 Plaintiffs' ADA and Section 504 claims are identical to the facts considered for the IDEA

6 claims, the Court also considers these claims on their merits.

7    ### 2.  *Merits of the ADA and Section 504 Claims*

8    Resolution of the ADA and Section 504 claims depends largely on whether the

9 findings of the ALJ are accepted.  The factual basis of the ADA and Section 504 claims is

10 identical to the basis of the IDEA claims adjudicated by the ALJ.[8]  Plaintiffs' Motion for

11 Summary Judgment, docket no. 18, at 23.  The elements of a claim under the ADA and

12 Section 504 are very similar.  Generally, the plaintiff must show that: "(1) he is a

13 "qualified individual with a disability";[9] (2) he was either excluded from participation in

14 or denied the benefits of a public entity's services, programs, or activities, or was

15 otherwise discriminated against by the public entity; and (3) such exclusion, denial of

16 benefits, or discrimination was by reason of his disability."  Duvall v. County of Kitsap,

17 _____

18 [8] While the factual basis is the same, the legal standard for a FAPE under Section 504 is similar but not
identical to a FAPE under IDEA.  Mark H. v. Lemahieu, 513 F.3d 922, 933 (9th Cir. 2008).  "FAPE
19 under § 504 is defined to require a comparison between the manner in which the needs of disabled and
non-disabled children are met, and focuses on the "design" of a child's educational program."  Id.
20 Adopting a valid IDEA IEP is sufficient but not necessary to satisfy the Section 504 FAPE requirements.
Id.

21 [9] In its response, the District asserts that a triable issue of fact exists as to whether the Student is a
qualified individual with a disability under the ADA and Section 504.  Defendant's Response, docket
22 no. 22, at 27 – 29.  The ADA and Section 504 claims can be resolved on other grounds and the issue of
whether the Student is a qualified individual with a disability need not be considered.

23

ORDER - 23

260 F.3d 1124, 1135 (9th Cir. 2001) (citing <u>Weinreich v. Los Angeles County</u>

<u>Metropolitan Transp. Auth.</u>, 114 F.3d 976, 978 (9th Cir. 1997)).  A "public entity can be

liable for damages under § 504 if it intentionally or with deliberate indifference fails to

provide meaningful access or reasonable accommodation to disabled persons."  <u>Mark H.</u>

<u>v. Lemahieu</u>, 513 F.3d 922, 938 (9th Cir. 2008).

  The Plaintiffs have raised three ways in which they claim the District has violated

the ADA and Section 504: (1) failing to provide the Student reasonable accommodations;

(2) excluding the student from programming on the basis of his disability; and (3) failing

to provide the Student with FAPE.  Plaintiffs' Motion for Summary Judgment, docket

no. 18, at 23, 26, 27.

  **a.  Failure to Provide Accommodations**

  Under the ADA and Section 504, "an educational institution is not required to

make fundamental or substantial modifications to its program or standards; it need only

make reasonable ones."  <u>Zukle v. Regents of the Univ. of Cal.</u>, 166 F.3d 1041, 1046 (9th

Cir. Cal. 1999) (citing <u>Alexander v. Choate</u>, 469 U.S. 287, 300 (1985)).  If the Plaintiffs

meet "the burden of producing evidence of the existence of a reasonable accommodation

that would enable [the Student] to meet the educational institution's essential eligibility

requirements," the burden shifts to the District "to produce evidence that the requested

accommodation would require a fundamental or substantial modification of its program

or standards."  <u>Id.</u> at 1047.  The District "may also meet its burden by producing evidence

that the requested accommodations, regardless of whether they are reasonable, would not

enable the student to meet its academic standards."  <u>Id.</u>

ORDER - 24

1   The Plaintiffs point to two denied accommodations in support of their claims: (1)

2   an IEP accommodation for extended time on assignments, and (2) a requested

3   accommodation to limit homework to two hours per night.  Plaintiffs' Motion for

4   Summary Judgment, docket no. 18, at 24 – 25.  The Student's August 2010 IEP states as

5   an accommodation that "if extended time is needed for assignment, [Student] or his

6   parent will indicate a suggested new date on the daily progress report."  AR Vol. II at

7   p. 604.  The Father questioned whether the Student received credit for late work because

8   the Student received failing grades and the District told the Father via email that the

9   Student would be held to the PRISM program homework standards.  AR Vol. IX at pp.

10  631 – 636.   The ALJ found that the Student's "teachers uniformly gave full credit for the

11  Student's homework regardless of when it was turned in."  AR Vol. I at p. 44:¶ 55.  The

12  ALJ's findings on this issue involved witness credibility determinations and are

13  supported by the evidence.  The Court adopts the ALJ's findings and holds that the

14  District did not deny a reasonable accommodation because the District provided extended

15  time to complete assignments as required by the IEP.

16  The ALJ considered "extensive testimony" about limiting homework to two hours

17  per night and found that the "teachers testified unanimously against it, based on

18  homework being an essential component of course work and the Student being unable to

19  keep up with class discussions and sequencing without doing it."  Id. at p. 44:¶ 58.   The

20  ALJ found that the "District's witnesses are…more persuasive than the Parents' on this

21  question."  Id. at p. 44:¶ 59.  The limitation recommendation came from Dr. Kwon, the

22  Student's therapist, who was "recommending alleviation of his greatest source of stress."

23

1   Id. However, the ALJ found that Dr. Kwon "was not qualified to speak to whether the

2   Student could continue in PRISM and learn the course work if the homework limit…was

3   adopted." Id. Furthermore, the ALJ found that "the Student was already doing only

4   partial homework and was not, in fact, mastering the course material." Id. The ALJ

5   found that the requested accommodation "would not have allowed the Student to

6   continue in PRISM and learn the course work." Id.

7        The ALJ's findings on this issue are also thorough and comprehensive, involved

8   witness credibility determinations, and are supported by the evidence. The determination

9   that the homework requirement was an "essential component" of the course work and

10  that the Student would not be able to keep up with class discussions without the

11  homework shows that limiting the assignments would substantially modify the program.

12  In addition, the ALJ's determination that even with the accommodation the Student could

13  not continue in the program shows that the Student would not be able to meet the

14  academic standards of the PRISM program even with the accommodation.

15        The Court adopts the ALJ's findings and holds that the District did not fail to

16  provide a reasonable accommodation because the proposed accommodation would

17  substantially modify the PRISM program and because the proposed accommodation

18  would not enable the Student to meet the academic standards of the PRISM program.

19       **b.  Exclusion from Programming**

20        The Plaintiffs claim that the Student was otherwise qualified to participate in the

21  PRISM program, that the District failed to provide all the accommodations the Student

22  required, and that the District stated he would need to leave the program. Plaintiffs'

23

ORDER - 26

1   Motion for Summary Judgment, docket no. 18, at 27.  The ALJ's detailed findings on this

2   issue show that it was the Parents, not the District, who removed the Student from the

3   PRISM program.  AR Vol. I at p. 50:¶ 88.  The ALJ found that at the January 18, 2011,

4   IEP meeting, several participants indicated that PRISM was not appropriate for the

5   Student, including the Parents' former attorney, the Student's therapist Dr. Kwon, and

6   one of the Student's teachers.  Id. at p. 49:¶ 84.  Following that meeting, the District

7   proposed moving the Student out of the PRISM program, and the Parents rejected the

8   proposal.  Id. at p. 49:¶ 85.  The parties were unable to come to an agreement about the

9   proper placement of the Student and on February 22, 2011, the Parents' attorney notified

10  the District that the Student would be unilaterally placed full-time at Dartmoor, a private

11  school, after March 11, 2011.  Id. at p. 50:¶ 88.

12        The Parents argue that they withdrew the Student only after "it became clear to the

13  Parents that the District would not provide the Student with an appropriate program in the

14  PRISM program."  Plaintiffs' Reply, docket no. 23, at 14.  However, the ALJ noted that

15  "several educational and psychological professionals believe PRISM was an

16  inappropriate placement for the Student even with appropriate supports and

17  accommodations."  AR Vol. I at p. 50:¶ 90.  Among those experts were the Student's

18  teachers and the special education supervisor.  Id.  The Father testified that PRISM was

19  appropriate with the proper accommodations, as did the Student's therapist Dr. Kwon and

20  another psychologist, Dr. Richard Garcia.  Id. at p. 50:¶¶ 89, 91.  However, the ALJ

21  noted that neither psychological professional observed the Student at school or

22  communicated with his teachers.  Id. at p. 50:¶ 91.  The ALJ concluded that the PRISM

23

ORDER - 27

1   program was an inappropriate placement for the Student which "could not be

2   compensated for" by supports or accommodations.  Id. at p. 63:¶ 35.

3          The ALJ's findings adequately demonstrate that the District attempted to work

4   with the Parents to find an appropriate placement for the Student and the Parents

5   unilaterally removed the Student from the District.  Id. at p. 49:¶ 85 – p. 50:¶ 91.  Thus

6   the Court concludes that the District did not deny the Student equal access solely on the

7   basis of his disability and thus did not discriminate against the Student under either the

8   ADA or Section 504.[10]

9          **c.  Failure to Provide FAPE**

10          The Parents allege that the District's refusal to allow the two-hour limitation on

11   homework each night was a denial of FAPE under the ADA and Section 504.  Plaintiffs'

12   Motion for Summary Judgment, docket no. 18, at 29.  The ALJ's findings support a

13   conclusion that the two-hour limitation was not a reasonable accommodation and

14   therefore this claim also fails.  The Court holds that the District did not deny the Student

15   a FAPE by refusing to implement the requested homework limitation accommodation.

16

17   _____

18   [10] Even if the Court were to find that the District forced the Parents into taking action and thus denied the
     Student access to the PRISM program, the Plaintiffs are unable to show that the District acted with the

19   *mens rea* of intentional discrimination or deliberate indifference.  The only evidence the Plaintiffs present
     to indicate that the District acted with deliberate indifference was the District's failure to grant the two-

20   hour homework limitation without discussing the request with the teachers.  Plaintiffs' Response, docket
     no. 21, at 23-24.  However that was not a reasonable accommodation to the PRISM program, whether or

21   not the teachers would have been willing to honor the request.  The ALJ's findings indicate that the
     District attempted to work with the Parents to find an appropriate program with necessary

22   accommodations for the Student.  AR Vol. I at pp. 48 – 50.  There is no evidence that the District acted
     with deliberate indifference toward the needs of the Student.

23

ORDER - 28

1

## VI.    Conclusion

2       The ALJ considered extensive testimony and evidence in this case and entered

3   thorough and well-reasoned findings of fact and conclusions of law.  The Plaintiffs have

4   not met the burden of showing that the District materially failed to implement the

5   Student's IEP or prevented the Parents from full participation.  Therefore the Plaintiffs

6   have failed to establish a violation of the IDEA.  The Plaintiffs' ADA and Section 504

7   claims are based on the same factual situation as the IDEA claims and these claims also

8   fail on the merits.  For these reasons, the Court accepts the findings of the ALJ, the

9   Defendants' Motion for Summary Judgment is GRANTED, Plaintiffs' Motion for

10   Summary Judgment is DENIED, and this case is DISMISSED with prejudice.[11]

11       IT IS SO ORDERED.

12       The Clerk is directed to send a copy of this Order to all counsel of record.

13       Dated this 15th day of February, 2013.

14

15                                                        THOMAS S. ZILLY
                                                         United States District Judge
16

17

18

19

20
_____

21   [11] As the Parents are not the prevailing party here, the Plaintiffs' request for attorney's fees is also
     DENIED.  Under the IDEA, attorney's fees are only available to the parent who is a prevailing party.  20
22   U.S.C. § 1415(i)(3)(B)(i)(I)

23

ORDER - 29